# UNITED STATES DISTRICT COURT
for the
Western District of Washington

```
                                    FILED _____ LODGED
                                    _____ RECEIVED
                                    Mar 20, 2024
                                    CLERK U.S. DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON AT TACOMA
                                    BY _____ DEPUTY
```

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information Associated with Certain Cellular Towers

Case No. MJ24-5076

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference.

located in the ___Western___ District of ___Washington___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 842(a)(3)(A) and (o) | Unlawful receipt of explosive materials and possession of unregistered explosives. |

The application is based on these facts:
✓ See Affidavit of FBI Special Agent Jamie Giannotti, continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Jamie Giannotti*
Applicant's signature

Special Agent Jamie Giannotti, FBI
Printed name and title

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⦿ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 03/20/2024

Judge's signature

City and state: Tacoma, Washington

Grady J. Leupold, United States Magistrate Judge
Printed name and title

2023R01317

# AFFIDAVIT OF JAMIE GIANNNOTTI

STATE OF WASHINGTON )
) ss.
COUNTY OF GRAYS HARBOR )

I, Jamie Giannotti, a Special Agent with the Federal Bureau of Investigation, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June 2023. My current assignment is with the FBI Seattle Field Office, South Sound Joint Terrorism Task Force, investigating a variety of criminal and national security matters, including violent crimes and major offenses such as threats to human life, threats to damage property, actual and attempted bombings, and efforts to use violence in support of, or to counter, a particular ideology. My training and experience include a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I am a Certified Public Accountant. Prior to my time with the FBI, I assisted in the audit of public and private companies.

2. The facts set forth in this Affidavit are based on my personal knowledge; knowledge obtained from other individuals during this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth every fact that I, or others, have learned during this investigation.

Affidavit of Special Agent Giannotti - Page 1
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# PURPOSE OF AFFIDAVIT

3. I make this Affidavit in support of an application for warrants for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey, AT&T, a cellular service provider headquartered in North Palm Beach, Florida, and Verizon Wireless, a cellular service provider headquartered in Bedminster, New Jersey (collectively, the "Wireless Providers"). The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Wireless Providers to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. The purpose of the warrants is to identify the suspect(s) who engaged in violations of Title 18, United States Code, Section 842. Section 842(a)(3)(A) makes it unlawful for "any person other than a licensee or permittee[to] knowingly transport, ship, cause to be transported, or receive any explosive materials." Section 842(o) makes it a felony for "any person, other than an agency of the United States (including any military reserve component) or the National Guard of any State, possessing any plastic explosive on the date of enactment of this subsection, to fail to report to the Attorney General within 120 days after such date of enactment the quantity of such explosives possessed, the manufacturer or importer, any marks of identification on such explosives, and such other information as the Attorney General may prescribe by regulation." Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 842(a)(3)(A) and (o) have been committed by an

Affidavit of Special Agent Giannotti - Page 2
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

unknown person(s). There is also probably cause to search the information described in Attachment A for evidence of this crime as further described in Attachment B.

5. As described below, I am investigating a series of suspected explosions on the railroad tracks in Montesano, WA. The requested cell tower data is expected to allow investigators to identify the phone(s) used by the subject(s) at the time of the offenses, which may allow investigators to identify the subject(s) themselves. As described below, this is the second request for cell tower data in this investigation.

6. This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO CELL TOWERS

7. In my training and experience, I have learned that the Wireless Providers are companies that provides cellular communications service to the public. To provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

8. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network

Affidavit of Special Agent Giannotti - Page 3
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

9. Based on my training and experience, I know that cellular providers such as the Wireless Providers routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower) to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication.

10. Based on my training and experience, I know that cellular providers such as the Wireless Providers can query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period and produce the information described above. I also know that cellular providers can determine which cellular tower(s) provided coverage to a given location at a particular time.

11. Based on my training and experience and the above facts, information obtained from cellular service providers such as the Wireless Providers that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of the victim

Affidavit of Special Agent Giannotti - Page 4
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

railroad line and train at the time of the explosion. This information, in turn, will assist law enforcement in determining which person(s) were present at that time.

12. Based on my training and experience, I also know that the Wireless Providers collect timing advance measurement data in the normal course of business. Timing advance data estimates the approximate distance of the cellular device from a cellular tower based upon the speed and time that it takes the cellular signals to travel from the cell tower to the device and back to the tower. This information can be used to estimate the approximate location range. These measurements are more precise than typical cell site records contained in call detail records. This data helps identify the devices that are located very close to the cell tower and those located at a greater distance.

13. The Wireless Providers can provide timing advance data for one device as well as all the devices connected to a cell tower for a specific time frame. A traditional tower dump includes only the cell tower and sector (no distances) and only covers voice and SMS connections. Timing advance data often include voice, SMS, and data activity. Users of cell phones are more actively engaged in data connections than voice and SMS activity.

14. Based on my training and experience, I know that a large percentage of people whose cellular devices connect to a cell tower as they pass within range may not be actively using their devices to make calls or send text messages, but their devices will still connect to the tower and utilize it for passive data connections. These devices would be identified through timing advance data.

15. Based on my training and experience, I know that individuals engaged in criminal activity do not typically pause or stop during that activity to make phone calls or send text messages. However, in the process of carrying out criminal acts, their cellular devices still connect to the cell towers that serve the area they are in, and through data connections, are still captured in timing advance data. Thus, the records requested in this

Affidavit of Special Agent Giannotti - Page 5
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

case may identify the cellular devices that were in the vicinity of the below described explosion at the time of the offense. This information, in turn, will assist law enforcement in determine with persons were present for those offenses.

**SUMMARY OF PROBABLE CAUSE**

16. The Puget Sound and Pacific Railroad (PSP) operates over 150 miles of track serving the state of Washington. PSP is headquartered in Centralia, Washington. The railroad's main commodities are timber products, garbage, and chemicals. The line from Centralia to Grays Harbor has soybean, auto, and military trains in addition to regular local traffic.

17. On October 11, 2023, at approximately 10:15 p.m. PDT, a Montesano Police Officer heard a large boom coming from the railroad tracks. At that time a train was traveling westbound through Montesano. The conductor operating the train also heard the explosion and came to a stop. The officer proceeded to the railroad tracks at/near 412 South Main Street, Montesano, exited their patrol vehicle, and started walking eastbound up the tracks. The officer smelled a burnt gun powder type odor and saw what appeared to be smoke blowing towards them. The officer contacted the conductor, and, after checking for no visible signs of damage, the conductor continued to Aberdeen.

18. On October 17, 2023, FBI Agents interviewed the PSP conductor who was operating the train that drove through Montesano on October 11, 2023. The conductor reported he was driving westbound through Montesano at approximately 25mph, with the windows open. As the train passed between the two crossings in Montesano, the conductor heard a large boom outside the train on the right side and felt the percussion from an explosion, described as a "thud." He looked out the window and, in the mirror, could see sparks and lots of dark gray smoke. The sparks were elevated up the side of the train, on the second engine car, which was directly behind his car. The conductor initially thought he had "blown a turbo," as that part of the train engine is known to explode

Affidavit of Special Agent Giannotti - Page 6
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sometimes. The conductor stopped the train and did not observe any damage to the cars. Engines are inspected prior to being used, and the subsequent inspection of this engine did not turn up any damage either.

19. FBI Agents also interviewed multiple employees of PSP who reported similar instances. PSP employees reported they experienced similar explosions on the same piece of railway track in Montesano between the spring of 2021 and fall of 2023. PSP employees reported identifying potential suspects in proximity of several of the explosions. These individuals were typically parked in a vehicle in the vicinity of the explosions, but at varying distances.

20. On January 5, 2024, I applied for and received a warrant for records and information associated with communications to and from cell towers providing service at/near 412 South Main Street, Montesano, from 9:30 p.m. to 10:30 p.m. (PDT) on October 11, 2023. I have received the requested records back from the cellular providers, AT&T, T-Mobile, and Verizon Wireless, on or around February 14, 2024.

21. On February 10, 2024, at approximately 9:15 p.m. PST, an explosion occurred as a PSP train passed over the rail crossing at Monte Brady Rd in Grays Harbor. On February 12, 2024, FBI Agents interviewed the PSP conductor who operated the train on February 10, 2024. The conductor said s/he was driving eastbound from Aberdeen through Montesano at approximately 25mph. At approximately 9:12 p.m. PST, as the leading wheels of the rail car passed the Monte Brady crossing (crossing 096658B) an explosion occurred underneath the train, on the north side. The conductor saw a flash, heard a loud boom, and felt the percussion from the explosion. The train continued, and when the conductor was able to stop later, s/he reported no damage to the train.

22. Prior to the explosion, as the conductor was traveling eastbound on the train, s/he reported seeing a silver sedan paralleling the train, driving east on Monte Elma Rd. The conductor observed the sedan turn right on Monte Brady Rd. The sedan pulled up to the north side of the train tracks and stopped. The conductor advised there was

Affidavit of Special Agent Giannotti - Page 7
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 enough distance between the train and the Monte Brady crossing for the sedan to have
2 crossed the tracks in front of the train, but the sedan did not cross the train tracks. The
3 sedan stayed at the intersection for a couple of seconds. The sedan then backed up, made
4 a U-turn, and turned left on Monte Elma Rd, heading back west toward Montesano. The
5 conductor reported the sedan had both head lights and fog lights. The conductor lost
6 visual of the sedan as he passed through the Monte Brady crossing.

23. The railroad tracks located at the Monte Brady crossing are surrounded by rural residential properties. The properties consist primarily of single-family residences on large acreage lots. The area has a low population density. The estimated population within the requested radius is 175 people. Below is an aerial map view of the explosion location and the requested radius for tower dump data.



Affidavit of Special Agent Giannotti - Page 8
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

24. To protect tower-dump information related to innocent third parties, the government will seize only information from the tower in the allocated timeframe, which includes the period immediately preceding, during, and following the specified explosion. Only data from mobile devices that connected to the tower in the timeframe surrounding the explosion will be captured by this warrant. Timing advance data will further allow investigators to determine the approximate distances of the mobile devices from the tower, allowing them to separate potential subjects (e.g., who may have been parked in proximity to the explosion) from individuals who are not related to the aforementioned criminal activity (e.g., those who were at or in a nearby residence).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

25. Based on the foregoing, I request that the Court issue the proposed cell tower search warrants pursuant to 18 U.S.C. § 2703(c). I further request that the Court direct the Wireless Providers to disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control. Because the warrants will be served on these providers, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.

## REQUEST FOR SEALING

26. I further request this Court issue an order sealing all papers submitted in support of the requested search warrants, including the application, this affidavit, the attachments, and the requested search warrants. I believe sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause the culpable person(s), or others associated with the culpable person(s) to flee from prosecution, cause destruction of or tampering with evidence, or otherwise seriously jeopardize this investigation.

Affidavit of Special Agent Giannotti - Page 9
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrants may adversely affect the integrity of the investigation.

## CONCLUSION

27. Based on the forgoing, I request that the Court issue the proposed warrants, pursuant to pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703.

Respectfully submitted,

*Jamie Giannotti*

JAMIE GIANNOTTI
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 20th day of March 2024.

_____
GRADY J. LEUPOLD
United States Magistrate Judge

Affidavit of Special Agent Giannotti - Page 10
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# ATTACHMENT A
**Property to be Searched**

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") on the identified date and timeframe that are within the possession, custody, or control of the cellular service providers T-Mobile, Verizon Wireless, and AT&T (collectively, the "Wireless Providers"). Please provide all cellular telephone numbers whose timing advance data places them within a half-mile radius from the below locations.

| Cell Towers | Date | Timeframe |
|---|---|---|
| The cell towers that provided cellular service to 4 Monte Brady Rd Montesano, WA 98563 | February 10, 2024 | 8:45 p.m. – 10:00p.m. (PST) |

The following cellular service providers are required to disclose information to the United States pursuant to this warrant:

1. T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey;
2. Verizon Wireless, a cellular service provider headquartered in Bedminster, New Jersey; and
3. AT&T Wireless, a cellular service provider headquartered in North Palm Beach, Florida.

ATTACHMENT A - Page 1
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# ATTACHMENT B
## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

For each cell tower described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications, including voice, SMS, and data, made using the cellular towers identified in Attachment A during the corresponding timeframe listed in Attachment A, including records that identify:

    a. the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

    b. for each communication, the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served wireless device; and

    c. the date, time, and duration of each communication; and

    d. the approximate range of the target handsets from the cell tower (commonly referred to as range to tower, Real Time Tool (RTT) or per call data measurement data, timing advance, True Call or NELOS).

These records should include records about communications that were initiated before or terminated after the timeframe identified in Attachment A if some part of the communication occurred during the relevant timeframe listed in Attachment A.

ATTACHMENT B - Page 1  
USAO 2023R01317

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

**II.   Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, Title 18, United States Code, Sections 842(a)(3)(A) (unlawful receipt of explosives) and 842(o) (possession of unregistered explosives) committed during the timeframe identified in Attachment A, such as:

Information relevant to any wireless device that communicated with a cellular tower providing cellular service to 4 Monte Brady Rd Montesano, WA, 98563.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Wireless Providers to locate the things particularly described in this Warrant.

ATTACHMENT B - Page 2
USAO 2023R01317

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800